UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| | ) | |
| v. | ) | |
| | ) | (JUDGE           ) |
| TIMOTHY H. ALBRIGHT | ) | |
| | ) | (ELECTRONICALLY FILED) |
| Defendant. | ) | |

### INFORMATION

**Conspiracy**
**(Title 18, United States Code, Section 371)**

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this Information, unless specific dates are otherwise noted:

A.  **Introduction.**

1.  From on or about January 7, 2008 to on or about October 20, 2008, defendant Timothy H. Albright ("Albright"), a Specialist with the Pennsylvania National Guard, was assigned to the 53rd Joint Movement Control Battalion, 101st Joint Logistics Command, Combined Joint Task Force, with duties at Bagram Airfield in Afghanistan. He served as an E4 in the United States Army at Bagram. As an Army E4, defendant was a public official within the meaning of Title 18, United States Code, Section 201(a)(1).

2.  In his position at Bagram, Albright, who served as a Commercial Vendor Services Specialist, processed invoices resulting from the provision of supplies by Afghan vendors to restock supplies at the Humanitarian Aid Yard at Bagram. Albright was responsible for reviewing invoices submitted by Afghan vendors who had been awarded contracts to replenish the Humanitarian Aid Yard. If the documents were in order, Albright would date stamp and

submit them for payment. Albright's supervisor ("supervisor") was also with the Pennsylvania National Guard, and served as an E6 with the United States Army

3. An Afghan interpreter ("interpreter") supported Albright's office. He did so by helping prepare pay vouchers, translating with vendors, and calling vendors when there was a problem with an invoice.

4. An Afghan vendor ("vendor") had several million dollar contracts through his company with the Humanitarian Aid Yard. One day after Albright had quickly paid an invoice submitted by the Afghan vendor, the Afghan interpreter provided Albright with two $100 bills. The interpreter told Albright that the money was a thank you gift from the vendor for paying the invoice quickly, which money Albright accepted. Albright received approximately four to five payments from the vendor. The largest single payment Albright received from the vendor was $10,000. Albright received every payment from the vendor through the interpreter.

5. Albright sent the money he received from the Afghan vendor to his wife in Lebanon, Pennsylvania though the United States Postal Service. He typically sent it in a box he would fill with DVDs. He would place the money in envelopes containing greeting card, and insert the cards in between the DVDs. Each envelope typically contained approximately $1,000.

6. On or about August 29, 2008, Albright's wife used approximately $18,000 of the money Albright received from the Afghan vendor and sent to her to buy a Nissan Maxima from a Nissan dealer in East Petersburg, Pennsylvania.

7. Initially, Albright hid from his supervisor the money he received from the Afghan vendor. The supervisor, however, would not do what was necessary to pay the vendor's invoices right away. If the vendor was late with an invoice, Albright's supervisor would handle it like any other invoice. Albright would, however, push his supervisor to expedite it. At about the

time of the third payment from the vendor, Albright told his supervisor about the payments and encouraged him to participate in the scheme. The supervisor did not like to talk about it, but did accept money from the vendor through the interpreter. Albright and his supervisor would split up stacks of $100 bills provided by the interpreter. The interpreter also provided money directly to the supervisor. Albright also showed his supervisor how to send the money home to the United States.

    **B.**    **The Conspiracy.**

8.    From on or about January 7, 2008 to on or about October 20, 2008, defendant Albright knowingly and willfully conspired, confederated, and agreed with others known and unknown to the United States, including his supervisor, the Afghan interpreter, and the Afghan vendor, to commit an offense against the United States, namely bribery, in violation of 18 U.S.C. § 201(b)(2), by agreeing among themselves and others for defendant to receive and accept illegal bribes from the interpreter and the vendor in return for being influenced in the performance of an official act, that is, expediting and ensuring the successful processing of the vendor's invoices submitted to the Humanitarian Aid Yard at Bagram Airfield.

### MANNER AND MEANS

9.    It was part of the conspiracy that:

    a.    Albright would select for expedited and successful processing the invoices submitted to the Humanitarian Aid Yard at Bagram Airfield by the Afghan vendor.

    b.    Albright would receive money from the Afghan vendor, through the Afghan interpreter, in return for expedited and successful processing of the vendor's invoices.

c. Albright would encourage his supervisor also to expedite and successfully process the invoices submitted by the Afghan vendor in return for payments from the vendor to the supervisor through the interpreter.

d. Albright would use the bribe money he received from the vendor for his and his family's personal expenses in Afghanistan and the United States.

## OVERT ACTS

10. In furtherance of the conspiracy and to affect its objects, the following overt acts, among others, were committed in Afghanistan and in the Middle District of Pennsylvania:

a. In or about the summer of 2008, Albright received a $10,000 bribe payment from the Afghan vendor, through the Afghan interpreter, for expediting and successfully processing the invoices submitted by the Afghan vendor.

b. In or about July and August 2008, Albright and his supervisor split up stacks of $100 bills provided by the Afghan interpreter on behalf of the Afghan vendor for expediting the vendor's invoices.

c. In or about in August and September 2008, Albright caused deposits in his joint bank account with his wife of deposits ranging from $1,100 to $9,000, totaling about $25,000, from the money he received from the Afghan vendor.

d. On or about August 29, 2008, Albright's wife, at his direction, paid $9,000 in cash and a $9,000 cashier's check, from the money Albright received from the Afghan vendor, to buy a Nissan Maxima from a Nissan dealer in East Petersburg, Pennsylvania.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION UNDER
## 28 U.S.C. § 2461(c) AND 18 U.S.C. § 981(a)(1)(C)

1. The violation alleged above in this Information is realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

2. Upon conviction of the offense alleged in this Information, the defendant, Timothy H. Albright, shall forfeit to the United States any interest he has in property, real or personal, constituting, or derived from, proceeds traceable to the conspiracy to commit bribery, in violation of Title 18, United States Code, Section 371, including, but not limited to:

   a. $25,000 in U.S. Currency, which represents the sum of money equal to the amount of proceeds derived from or traceable to the conspiracy to commit bribery, in violation of 18 U.S.C. § 371; and
   b. a 2008 Nissan Maxima (VIN: 1N4BA1E98C812386).

3. If any of the property described above as being subject to forfeiture pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), as a result of any act or omission of the defendant:

   (a) cannot be located upon the exercise of due diligence;
   (b) has been transferred or sold to, or deposited with, a third party;
   (c) has been placed beyond the jurisdiction of the Court;
   (d) has been substantially diminished in value; or
   (e) has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to seek the forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Criminal Forfeiture, pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

PETER J. SMITH
United States Attorney
Middle District of Pennsylvania

WILLIAM J. STELLMACH
Acting Chief, Fraud Section
United States Department of Justice

*/s/ Gordon Zubrod*
GORDON A. ZUBROD
Assistant United States Attorney

*/s/ Daniel P. Butler*
DANIEL P. BUTLER
Trial Attorney